J-S28013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CARRIE DETWILER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD DETWILER, JR. | : | No. 1905 MDA 2018 |

Appeal from the Order Entered October 26, 2018
In the Court of Common Pleas of York County Civil Division at No(s):
2000-FC-000492-15

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 29, 2019**

Carrie Detwiler ("Mother") appeals from the October 26, 2018 order enforcing the marital settlement agreement that she entered into with Ronald Detwiler ("Father").  We affirm.

Mother and Father have two daughters, born in 1997 and 1999, respectively.  On January 8, 2004, the parties executed a marital settlement agreement ("MSA") that was incorporated in, but not merged with, the divorce decree entered on January 23, 2004.  As it relates to this appeal, Paragraph Eleven of the MSA outlines the financial responsibilities of the parties to aid in their children's post-secondary educational expenses.  The MSA provides:

> EDUCATIONAL EXPENSES OF CHILDREN. With respect to the Children's future education, the parties agree that they will contribute to the cost of the Children's undergraduate college and/or post-secondary vocational or technical training expenses, including but not limited to the expenses therefore incurred for tuition, room and board, books and educational fees (hereinafter "the Educational Costs") **to the extent they are financial[ly]**

_____

\* Retired Senior Judge assigned to the Superior Court.

**capable at the time the expenses are incurred**. Before a party can be expected to contribute to the Educational Costs, the children must apply for scholarship, grant money and other available financial aid and the parties will consult with each other and jointly agree as to the expenses to be incurred and the educational institution to be selected for the Children. Since it is impossible to determine at the present time the ability of the Children to perform satisfactorily in their educational endeavors, at the time or times the Educational Costs are to be incurred, **the effectuation of the parties' intent pertaining to the foregoing will be determined from time to time based upon the Children's then existing ability to perform satisfactorily in their educational endeavors and the amount of the Educational Costs as such may exist when the Educational Costs are to be incurred**. This provision shall not confer any third[-]party beneficiary rights upon the parties' Children.

Marital Settlement Agreement, 1/8/04, at 14-15 (emphases added).

On August 23, 2015, Mother filed a petition to enforce the MSA and for contempt. Following a hearing on September 18, 2015, the trial court issued an order, hereinafter referred to as the 2015 order, requiring Father to pay fifty percent of the total educational expenses incurred by their elder child who was attending Bloomsburg University at the time. As it relates to Mother's current argument, *i.e.*, that Father continues to be responsible for no less than fifty percent of the children's education costs even though the MSA clearly requires payment only "to the extent the [parents] are financially capable," the 2015 order directed as follows:

> We then come to the amount Father should contribute, Mother's petition requests one[-]half of the educational costs. At hearing, [Father's] counsel requested 45%, which we assume is based on the domestic relations allocation for child support purposes. Mother did provide . . . an itemization of various costs for Bloomsburg University specifically, but also including SAT test prep course cost[,] . . . computer backup service for laptop, laptop surge protector, $730.00 college application fees, clothing and

personal items and unspecified costs to visit various colleges. The language of the MSA is in pertinent part, "the parties agree that they will contribute to the cost of the children's undergraduate college and/or postsecondary vocational or technical training expenses, including but not limited to the expenses therefore incurred for tuition, room and board, books and educational fees, **to the extent they are financially capable at the time the expenses are incurred**."

. . . .

The language of the agreement then is what it is. Accordingly, we find $23,000.00 (rounded) total yearly cost less $5,500.00 (loans and grant) or $17,500.00 annual cost is the amount to be shared equally by the parents.

Court Order, 9/18/15 at 4-5 (emphasis added).

Three years later, Mother filed a second petition to compel Father to pay educational costs, this time in relation to the then-approaching 2018-2019 school year, and for contempt. At that time, the parties' older daughter was starting her senior year at Bloomsburg, and their younger daughter was entering her freshman year at that institution. In the petition, Mother sought reimbursement for fifty percent of the educational expenses for the 2018-2019 school year. During the August 29 hearing, the court issued an order directing Father to pay Mother $3,967.68 for the older child's educational expenses during the fall semester and $4,529.88 for the younger sibling's educational expenses for the same period, which totaled $8,497.26,. He was required to satisfy the obligation by September 10, 2018 to avoid incurring late fees and interest. As to the petition for contempt, the court issued a rule to show cause directing Father to explain why he should not be held in contempt for failing to comply with the MSA.

Father complied with the rule returnable, and after the case was rescheduled twice, the hearing was scheduled to occur on October 23, 2018. The parties introduced documentation of their respective earnings. The evidence revealed that, in 2017, Mother's gross income was $82,441 and Father's income was $84,653. However, it was estimated that Father's income would decrease in 2018 by roughly $7,000. Mother's counsel requested an evidentiary hearing to provide proof of Mother's payments. However, the court declined to hold an evidentiary hearing at that juncture, stating that its concern at the time was not Mother's proof of payment, but Father's ability to pay, and whether the children had exhausted all means of financial aid and assistance as required by the MSA. The trial court issued the following order:

> [G]iven the communication difficulties and trust issues between the parties, the Court notes that **it would make more sense for one parent to be responsible for one semester and one parent to be responsible for the other semester**. By responsible, the court means coming up with a plan by which the children will have no interruption in their education.
>
> The parties have agreed that both of their children will complete their undergraduate education at Bloomsburg University. **In each year [M]other shall be responsible for all of the expenses in Semester 1, [F]ather shall be responsible for all of the expenses in Semester 2**. That means that each of them will be responsible for assisting their children in meeting the terms of the agreement and working with their children to come up with the education plan so that there are no interruptions. That includes the children providing directly to the parent responsible for that semester the actual costs for tuition, room and board, books, and educational fees.
>
> Additionally, the children will be responsible for working with their parent to quote, apply for scholarship, grant money, and other financial aid. If there are any loans that must be co-signed

by a parent, [M]other will be responsible for signing any loans necessary for her to finance the first semester in any year and [F]ather shall be responsible for co-signing any loans that are necessary for the second half of any year.

N.T., 10/23/18, at 52-53 (emphases added).

Mother timely appealed and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained on appeal. She raises two issues for our review:

1. Did the lower court err in failing to uphold the Marital Settlement Agreement in the same manner as the court had three years prior, in an earlier proceeding to enforce the Agreement?

2. Did the lower court err in failing to hold a full evidentiary hearing to determine to what degree each party must contribute to their children's post-secondary education costs?

Mother's brief at 6.

This Court reviews an order denying a petition to enforce a marital agreement for abuse of discretion. *Bennett v. Bennett*, 168 A.3d 238, 245 (Pa.Super. 2017). As we said in that case, "An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures." *Id*.

Mother's first issue invokes the law of the case doctrine. Specifically, she asserts that, because the 2015 order directed Father to pay fifty percent of the older child's educational expenses incurred that year, the court's calculation of Father's share was the law of the case. Thus, she posits that the current trial court was bound by that determination in addressing her present claim concerning both daughter's expenses for the 2018-2019 school year. Hence, she asserts that Father is responsible for fifty percent of the

- 5 -

educational costs rather than a division of the costs by semester after accounting for the girls' financial assistance. Mother also complains that the present order imposes new obligations on the children that did not exist in 2015. For all of the following reasons, no relief is due.

First, the law of the case doctrine does not apply to this situation. The law of the case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). As the High Court explained in *Starr*,

> Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Id*.

As it relates to the present case, the law of the case doctrine is designed to rectify differing determinations by courts of coordinate jurisdiction in the same case regarding identical subject matter. Nevertheless, the doctrine does not apply herein because the 2015 order did not establish Father's fixed obligation to his daughters' educational expenses. Instantly, following the presentation of new facts concerning the current economic status of the

- 6 -

parties and their daughters' existing educational expenses, the trial court resolved Mother's petition to compel based on the relevant evidence before it and reached a decision that varied only slightly from the earlier decision that was predicated on different costs and incomes. Phrased differently, the trial court's present consideration of the parties' current financial status and their daughters' respective educational expenses for the 2018-2019 school year differs from the considerations before the trial court three years earlier.

Furthermore, Mother's claim that the divergent outcomes offended the law-of-the-case doctrine ignores the fact that the trial court did not alter a prior resolution of a legal question. Plainly, the trial court's 2015 characterization of the language in the MSA as "it is what it is" relates to Mother's claim that Father was responsible for the additional expense that fell outside of the agreement, not the division of financial responsibility. Court Order, 9/18/15, at 5. While the court ultimately divided the costs equally between the parties, nothing in the MSA or the certified record supports Mother's notion that Father's obligation is permanently fixed at fifty percent. Indeed, as demonstrated by the conditional language in the accord that states the parents will contribute "to the extent they are financial[ly] capable," the MSA is purposely vague as to the precise share of each parties' financial responsibility. Marital Settlement Agreement, 1/8/04, at 14. While the trial court previously determined that Father was capable of paying what amounted to fifty percent of his older daughter's approved educational costs in 2015,

- 7 -

that does not mean that the Father is required to pay fifty percent of all future educational costs for both daughters under all circumstances. Mother's contrary perspective mischaracterizes the 2015 order and ignores the express terms of the MSA.

Moreover, to the extent that Mother asserts that the trial court added a condition in the 2018 order that was absent from the 2015 order, *i.e.*, requiring the children to seek financial assistance in addition to accepting their parent's contributions, the record also belies this contention. The MSA clearly states, "Before a party can be expected to contribute to the Educational Costs, the children must apply for scholarship, grant money and other available financial aid." Marital Settlement Agreement, 1/8/04, at 14. The record simply does not sustain Mother's assertion that the trial court "created a completely new ruling" which "could mean as little as co-signing [a loan] for the student loans of the children without actually contributing [to] any costs at all[.]" Mother's brief at 14. Again, both parents' obligations to the children's educational costs are expressly conditioned on the parent's ability to pay. As that contingency flows directly from the MSA, rather than the 2018 order, Mother's argument fails.

Next, we reject Mother's assertion that the trial court erred in failing to "hold a full evidentiary hearing" prior to rendering its decision. Mother's brief at 16. This contention is predicated on the inaccurate assumption that the trial court modified the MSA due to Father's loss of income. That is not the

case. In outlining the parties' current responsibilities under the MSA, the court specifically noted that "we are limited to the four corners of the [MSA] and will not be broadening, expanding, or otherwise modifying what the parties agreed to [do]." Court Order, 10/23/18, at 4.

In reality, consistent with the express contingency in the MSA relating to each parent's "financial capab[ility]" when the education costs are incurred, the trial court questioned Mother and Father from the bench during the October 23, 2018 hearing and accepted evidence regarding the parties' respective incomes and expenses, including annual income over the preceding four years, and their daughter's anticipated education expenses for the 2018-2019 school year. N.T., 9/23/18, at 3-4, 5, 6, 9-10, 16-24, 33. As noted, *supra*, the parties documented that Mother's gross income for 2017 was $82,441 and Father earned $84,653 that year. *Id*. at 3. The children's combined projected education costs for the 2018-2019 academic year were approximately $34,000. *Id*. at 33.

When Mother sought to introduce additional evidence to establish the amounts that she already paid, the trial court reminded that parties that, pursuant to MSA, "The issue is [Father's] financial circumstances, not what [Mother] paid." *Id*. at 24. The court continued,

> from an evidentiary perspective, there first needs to be evidence that they have jointly agreed as to the expense to be incurred. There then has to be evidence that the children have applied for all financial aid. After that, then I will look at what husband is -- father is financially capable of paying. I don't see [how] what she's paid is relevant, quite frankly.

- 9 -

*Id*. at 25.

Thus, contrary to Mother's protestations, the certified record does not support Mother's assertion that the trial court modified the agreement. Moreover, in light of the evidence presented during the October 2018 hearing, we do not discern an abuse of discretion in the court's decision to fashion an order that enforced the MSA's consideration of the current financial status of both parties and their present ability to contribute to their daughters' education related expenses.

Accordingly, for all of the foregoing reasons, we do not disturb the trial court's decision to make Father and Mother individually responsible for expenses incurred for the respective semesters for each daughter during the 2018-2019 academic year.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2019